UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **IRMA J. DURDEN,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | §    **CIVIL ACTION NO. 4:07-cv-865** |
| | § |
| **MICHAEL J. ASTRUE,** | § |
| **COMMISSIONER, SOCIAL SECURITY** | § |
| **ADMINISTRATION,** | § |
| | § |
| **Defendant.** | § |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability

benefits are Plaintiff's and Defendant's Motions for Summary Judgment. After considering the

parties' filings and the applicable law, the Court finds that Plaintiff's motion (Docket No. 17)

should be and is **GRANTED** to the extent that the ALJ's decision is vacated. Defendant's

motion (Docket No. 10) is **DENIED**. The case will be **REMANDED** to the Administrative Law

Judge for reconsideration.

### I.    BACKGROUND

Plaintiff filed an application for disability benefits on November 2, 2001, claiming she

became disabled on August 15, 2001, the date she fell at work and injured her back.[1]  Her

application was denied initially and on reconsideration. At a *de novo* hearing before the

Administrative Law Judge (ALJ) on December 9, 2003, Ms. Durden, represented by counsel,

also claimed that she had mental retardation. On June 23, 2004, the ALJ issued a decision

finding that Ms. Durden had severe impairments of degenerative disc disease, a dysthymic

---

[1] Plaintiff also noted in her application that she had cancer.

disorder, and mild mental retardation, but did not meet the criteria for a Listing. The ALJ found that she was not able to perform her past relevant work, but was able to perform certain jobs from August 15, 2001 to June 10, 2003. The ALJ thus concluded that Ms. Durden became disabled on June 10, 2003. Plaintiff appealed the ALJ's decision to the Appeals Council, arguing, *inter alia*, that the ALJ erred by neglecting to find Ms. Durden disabled under Impairment Listing 12.05C after finding that she had mild mental retardation and an additional exertional impairment. (Rec. 187.) Plaintiff further argued that the finding that Ms. Durden was capable of light work prior to June 11, 2003 was not supported by substantial evidence. (*Id.*) The Council reversed the ALJ's decision and remanded for a new hearing. (Rec. 192-194.) The Appeals Council specifically noted that further evaluation as to the claimant's work capacity was needed and indicated that the ALJ's finding as to the onset date of Ms. Durden's disability did not appear to be supported by substantial evidence. (Rec. 192. The Council suggested, without specifically finding, that Ms. Durden may have retained the capacity to work *beyond* June 11, 2003. (*Id.*) The Council also indicated that further evidence and evaluation was necessary to determine whether Ms. Durden met the criteria set forth in Listing 12.05, but noted that "the evidence does not support any significant deficits in adaptive functioning prior to age 22." (Rec. 193.)

The ALJ conducted a supplemental hearing on September 27, 2005, and issued a second partially favorable decision on October 28, 2007. In his second decision, the ALJ determined that Ms. Durden was insured under the Social Security Act through June 30, 2004. The ALJ found that Ms. Durden had not engaged in substantial gainful activity since August 15, 2001 and that the medical evidence established that Ms. Durden had the following "severe" impairments: "mild mental retardation, dysthmia and degenerative disc disease." Although the ALJ

2

recognized that Ms. Durden has mild mental retardation, he further held that she did not meet the criteria of Listing 12.05(C)(3), which addresses mental retardation. The ALJ then found that Ms. Durden had been unable to perform her past relevant work at all times relevant to the decision. In his second decision, however, the ALJ concluded that Ms. Durden had retained the residual functional capacity to perform sedentary work through December 2, 2003, six months later than the onset date the he found in his original decision. The ALJ concluded, therefore, that Ms. Durden was entitled to disability benefits only as of December 2, 2003.

The Appeals Council denied review of the ALJ's second decision on January 12, 2007. Plaintiff now seeks judicial review pursuant to 42 U.S.C. §405(g).

## II.    ANALYSIS

### A.    Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

### B.    Standard of Review

3

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)). Where "the Secretary has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990) (internal citation omitted).

## C.   Legal Standard

A disability claimant bears the initial burden of proving that she is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). A person claiming a disability must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, "[a] claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." *Ivy v. Sullivan*, 898 F.2d

4

1045, 1048 (5th Cir. 1990). In the instant case, Plaintiff bears the burden of demonstrating that

a qualifying medical impairment began on or before June 30, 2004.

The Court evaluates a disability claim via a five-step process, as follows:

(1) a claimant who is working, engaging in a substantial gainful activity, will not
be found to be disabled no matter what the medical findings are; (2) a claimant
will not be found to be disabled unless he has a "severe impairment"; (3) a
claimant whose impairment meets or is equivalent to an impairment listed in
Appendix 1 of the regulations will be considered disabled without the need to
consider vocational factors; (4) a claimant who is capable of performing work that
he has done in the past must be found "not disabled"; and (5) if the claimant is
unable to perform his previous work as a result of his impairment, then factors
such as his age, education, past work experience, and residual functional capacity
must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). "A finding

that a claimant is not disabled at any point in the five-step process is conclusive and terminates

the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

### D.    Ms. Durden's Claim

#### 1.    Listing 12.05

Plaintiff's central argument is that the ALJ did not apply the correct legal standard when

finding that Ms. Durden did not meet the criteria of Listing 12.05 which addresses mental

retardation. For the following reasons, the Court will not reverse the ALJ's decision on these

grounds.

##### a.    Standard

If a claimant meets a listing, she will be found disabled regardless of her age, education,

or work experience. 20 CFR § 404.1520(d); *see also Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)

("If the impairment meets or equals one of the listed impairments, the claimant is conclusively

presumed to be disabled.") A diagnosis alone is insufficient to meet a Listing. 20 C.F.R. §§

404.1525 (d) ("Your impairment(s) cannot meet the criteria of a listing based only on a

5

diagnosis.") Instead, "[t]o meet the requirements of a listing, you must have a medically
determinable impairment(s) that satisfies all of the criteria in the listing." *Id.; see also* 20 C.F.R.
§§ 404.1525(c)(3) (noting that an impairment must also meet "any relevant criteria in the
introduction").

Listing 12.05 addresses mental retardation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05.
Section 12.00A of the Appendix clarifies that "The structure of the listing for mental retardation
(12.05) is different from that of the other mental disorders listings." 20 C.F.R. Pt. 404, Subpt. P,
App. 1, § 12.00A. Specifically, "Listing 12.05 contains an introductory paragraph with the
diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A
through D). If your impairment satisfies the diagnostic description in the introductory paragraph
and any one of the four sets of criteria, we will find that your impairment meets the listing." *Id.*
The introductory paragraph to Listing 12.05 states: "Mental retardation refers to significantly
subaverage general intellectual functioning with deficits in adaptive functioning initially
manifested during the developmental period; i.e., the evidence demonstrates or supports onset of
the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05. The diagnostic
description for mental retardation therefore requires that a claimant demonstrate both subaverage
general intellectual functioning and deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P,
App. 1, §12.05. The Diagnostic and Statistical Manual of Mental Disorders (DSMV-IV)
confirms that there are two "essential features" of mental retardation, dubbing subaverage
general intellectual functioning "Criterion A" and significant limitations in adaptive functioning
"Criterion B." 4 DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 39 (2000).
According to the DSMV-IV, significant limitations in adaptive functioning must be "in at least
two of the following skill areas: communication, self-care, home living, social/interpersonal

skills, use of community resources, self-direction, functional academic skills, work, leisure,

health, and safety." *Id.*

A claimant who satisfies the diagnostic description must also demonstrate that she meets

the "required level of severity," which include:

B. A valid verbal, performance, or full scale IQ of 59 or less; or
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
other mental impairment imposing an additional and significant work-related
limitation of function . . . .

*Id.*

### b.   Relevant Evidence

Dr. Mark Lehman, a psychologist chosen by the Social Security Administration, assessed

Ms. Durden on January 12, 2004 and found that she is "likely functioning within the Mild

Mental Retardation classification of intelligence." (Rec. 169.) Dr. Lehman provided Ms.

Durden's scores on the WAIS-II Test: a Full Scale I.Q. score of 59, a Verbal I.Q. of 61, and a

Performance I.Q. of 65. *(Id.)* Dr. Lehman also noted that Ms. Durden's "wide range

achievement test" revealed that she read at a first grade level, and spelled at the kindergarten

level. (Rec. 170.) Although there is no evidence in the record of prior I.Q. testing, in response

to a medical interrogatory, Dr. Lehman answered that "it is reasonable to assume her IQ has

remained stable since 1973-74" and noted "in the absence of brain trauma, I.Q. is stable

throughout life." (Rec. 225.) In his Medical Source Statement, Dr. Lehman also indicated that

Ms. Durden had "extreme" [2] restrictions in understanding and remembering detailed instructions

and carrying out detailed instructions, "marked"[3] limitations in understanding and remembering

short, simple instructions, carrying out short, simple instructions and the ability to make

---

[2] The statement defines extreme: "There is a major limitation in this area. There is no useful ability to function in this area." (Rec. 171.)

[3] The statement defines marked: "There is serious limitation in this area. The ability to function is severely limited but not precluded." (Rec. 171.)

judgments on simple work-related decisions. (Rec. 171.) Dr. Lehman also concluded that Ms. Durden had a "moderate"[4] restriction in her ability to interact appropriately with the public, supervisors, and co-workers, and a "marked" limitation in responding appropriately to work pressures in a usual work setting and responding appropriately to changes in a routine work setting. (Rec. 172.)

At the December 2005 hearing, Dr. Daryl Knox, a psychiatrist selected by the ALJ to study Ms. Durden's medical records and give testimony, also testified regarding Ms. Durden's mental retardation. Although Dr. Knox initially ventured that Ms. Durden would probably meet the criteria of Listing 12.05(C)[5], upon questioning by the ALJ, he went on to say that she "seems to have had a fairly high level of functioning . . . despite her IQ" and "it seems like her adaptive functioning, her ability to work and to perform her ADLs were fairly adequate despite her IQ, and you have to have, in my interpretation of the listing, you have to have both, you have to have the IQ plus a decrease in your adaptive functioning." (Tr. at 253-54.)

Although Dr. Knox did not provide specifics, the record, which he considered, reflects the following. Ms. Durden failed second grade (Rec. 244), was put into special education (Rec. 243, 290), and left school after receiving all D's and F's in the Seventh Grade (Rec. 226, 243).[6] At age seventeen, she held a part-time job at a halfway house, (Rec. 269), and she subsequently worked as a housekeeper at a motel for eleven years (Rec. 286). Ms. Durden's husband, Kenneth Durden, testified that Ms. Durden had difficulty performing some of the required tasks at the halfway house, (Rec. 269), and that he helped Ms. Durden secure the job at the motel and

---

[4] The statement defines moderate as: "There is moderate limitation in this area but the individual is still able to function satisfactorily." (Rec. 171.)

[5] Knox Testimony, Admin. Rec. 253 ("I would think that she would probably equal the listing 12.05 number 3 . . . which requires a full scale IQ of 60 to 70 in a physical or other mental impairment imposing an additional [INAUDIBLE] and work related limitation of function.").

[6] The record only includes school records from the seventh grade.

8

temporarily volunteered for a part time maintenance job at the motel to keep an eye on her (Rec. 301). At the first hearing, Mr. Durden also testified, however, that Ms. Durden ultimately did not require more supervision than any of the other maids and was able to perform the job as well as the other maids. (Rec. 315.) Mr. Durden testified that his wife has never lived alone, does not go shopping alone, and is unable to read and pay utility bills. (Rec. 269.) In her initial application, Ms. Durden stated that she regularly got her family off to work, fed the dogs, cleaned the yard, cleaned the house, washed dishes, clothes, and vacuumed. (Rec. 67.) Ms. Durden additionally testified that she never learned to drive and had no friends outside of her family growing up "because they all called me names . . . like stupid . . . ." (Rec. 291.) Mr. Durden testified that as an adult, Ms. Durden did have a few friends outside the family that would stop by the house and have coffee. (Rec. 304.) When Ms. Durden described her day, she explained that she mostly lies around and sometimes watches television. (Rec. 299.)

### c. *The ALJ's Findings*

At Step Two, the ALJ found that Ms. Durden had mild mental retardation, a severe impairment. At Step Three, however, the ALJ found that Ms. Durden's impairment did not meet or equal the requirements of any listed impairment. Plaintiff maintains that the ALJ did not apply the correct legal standards at Step Three. Plaintiff argues that when the ALJ found Ms. Durden had mild mental retardation at Step Two, the ALJ must have recognized that Plaintiff met the diagnostic description in the introductory paragraph for Listing 12.05, i.e. that she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." At Step Three, Plaintiff contends, the ALJ therefore should have considered only whether Plaintiff also met the required level of severity set forth in 12.05 (A)-(D).

9

When finding at Step Three that, despite suffering from mild mental retardation, Plaintiff did not satisfy the diagnostic description for mental retardation set forth in the introductory paragraph of Listing 12.05, the ALJ first discussed the testimony of medical expert Dr. Daryl Knox. The ALJ explained that Dr. Knox had testified that "in spite of the claimant's low I.Q. scores, she appeared to have fairly adequate adaptive functioning" and noted that Dr. Knox acknowledged that the record did not contain evidence of intelligence testing prior to January 2004. (Rec. 19.) Thus, the ALJ concluded:

> Taking the medical expert's testimony into consideration, as well as evidence which shows that the claimant did indeed perform unskilled work subsequent to obtaining age 22, it is concluded that the claimant has failed to show deficits in adaptive functioning as required for a presumption of disability under section 12.05 of Appendix 1.

(Rec. 19.)

The Court admits that it is confusing for the ALJ to find that a claimant has mild mental retardation at Step Two (which, according to the agency's own definition, should mean that a claimant has deficits in adaptive functioning), and then conclude at Step Three that her impairment does not meet the diagnostic criteria for mental retardation required by the Listing because she does not show deficits in adaptive functioning. Although the Secretary has cited no cases precisely on point,[7] the relevant regulations specifically state that a claimant's impairments must meet all of the criteria in a listing including those set forth in the introductory paragraph. The listing sets forth a detailed diagnostic description of mental retardation in the

---

[7] The district court in *Jones v. Barnhart* upheld a finding that a claimant failed to meet the introductory paragraph of Listing 12.05 where the ALJ did not find that the claimant suffered from mental retardation at Step Two and instead concluded that the claimant had "routinely and consistently exaggerated his mental impairments." 2007 WL 628768, at *11 (W.D. Tex. Feb. 21, 2007). Likewise, in *Peoples v. Barnhart*, the district court emphasized that "Plaintiff has not been diagnosed with mental retardation at any point in his life." 2005 WL 1388553, at *4 (W.D. Tex. June 8, 2005) (refusing to remand to allow Plaintiff to undergo IQ testing). In *Higgins v. Barnhart*, 288 F. Supp. 2d 811, 818-20 (S.D. Tex. 2002), the district court considered the adaptive functioning and onset requirements of Listing 12.05 when upholding the ALJs' finding that the claimant did not meet the listing, but the ALJ had not found that the claimant had mental retardation at Step Two. *Accord Arce v. Barnhart*, 185 Fed. Appx. 437 (5th Cir. 2006), *Humprhies v. Barnhart*, 183 Fed. Appx. 887 (11th Cir. 2006).

10

introductory paragraph, and the ALJ found that Ms. Durden did not meet certain elements of that description. Plaintiff urges that the Court cannot be "expected to chisel that which must be precise from what the agency has left vague and indecisive." *SEC v. Chenery*, 332 U.S. 194, 196 (1947). The Court is not compelled to "guess at the theory underlying" the ALJ's analysis here, however. *Chenery*, 332 U.S. at 197. The ALJ at Step Three clearly found that Ms. Durden did not meet the introductory paragraph criteria because, in his opinion, she failed to show deficits in adaptive functioning. The Court finds that, despite his seemingly contradictory conclusion that Ms. Durden had mild mental retardation at Step Two, the ALJ was entitled if not required to consider whether Ms. Durden met the specific diagnostic description of mental retardation set forth in the introductory paragraph to Listing 12.05.

The question then becomes whether there is substantial evidence to support the ALJ's finding that Ms. Durden did not meet all of the criteria set forth in Listing 12.05. The Court finds that, based on the evidence in the record, the ALJ was entitled to conclude that Ms. Durden did not demonstrate deficits in adaptive functioning and, as such, did not meet the criteria set forth in the introductory paragraph of Listing 12.05.

The ALJ's determination that Ms. Durden did not have the requisite deficits in adaptive functioning at Step Three is supported by substantial evidence. The record demonstrates at least "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Hames*, 707 F.2d at 164. The ALJ stated in his findings that Ms. Durden did not demonstrate the deficits in adaptive functioning required by Listing 12.05 based on the medical expert's testimony and the fact that Ms. Durden performed unskilled work subsequent to age 22. (Tr. at 19.) Ms. Durden's unskilled work after age 22, standing alone, might not be enough to

11

defeat a finding that she had the requisite deficits in adaptive functioning.[8]  Despite the fact that

Ms. Durden's functional academic skills were indisputably poor, Dr. Knox and the ALJ were

entitled to consider other evidence in the record regarding her functioning  in areas such as self-

care, home living, self-direction, leisure, health, safety, etc.  There is at least some evidence in

the record to support that Ms. Durden did have adequate adaptive functioning in these areas.  The

Court recognizes that the record also contains evidence that could point to a different conclusion,

but this is a not a case where there is a "conspicuous absence of credible choices."  *Hames*, 707

F.2d at 164.  As a result, the Court finds that the ALJ's conclusion was supported by substantial

evidence. [9]

Plaintiff also argues that the ALJ ignored "overwhelming evidence" that Ms. Durden's

I.Q. today is what it was in her developmental years and should not have based his finding on the

absence of evidence of I.Q. testing prior to 2004.  The Court recognizes that the record contains

evidence that could support a conclusion that Ms. Durden's low I.Q. was stable from 1973

including Dr. Lehman's assessment, Ms. Durden's seventh grade school records, and other

testimony regarding Ms. Durden's academic history.  The Court further acknowledges that

several circuit and district courts have adopted a presumption that a person's I.Q. remains stable

over time in the absence of evidence of change in intellectual functioning, and do not require

claimants to present evidence that their low I.Q. manifested before age 22. *See, e.g.*, *Muncy v.*

*Apfel*, 247 F. 3d. 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed to remain stable over

time in the absence of any evidence of a change in a claimant's intellectual functioning);

---

[8] A person can meet the diagnostic description of mild mental retardation even though he or she has worked in the past.  *See, e.g.*, CAROLYN A. KUBITSCHEK, SOCIAL SECURITY DISABILITY: LAW AND PROCEDURE IN FEDERAL COURT § 5:44 (1994) ("[T]he fact that a claimant has previously worked does not refute the conclusion the claimant is mentally retarded.").  Furthermore, just because a person may demonstrate an ability to work does not mean that they do not have deficits in adaptive functioning in other skill areas.

[9] Because the ALJ's finding that Ms. Durden did not demonstrate the requisite deficits in adaptive functioning is supported by substantial evidence, Plaintiffs' argument that the ALJ erred by failing to consider Listing 12.05(B) also fails.

*Guzman v. Bowen*, 801 F.2d 273, 276-75 (7th Cir. 1986) (adopting presumption that low I.Q. existed prior to first I.Q. test); *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985) ("[T]here may be many reasons why an individual would not have had the opportunity or need to have a formal intelligence quotient test until later in life. The fact that one was not earlier taken does not preclude a finding of earlier retardation."); *Rowell v. Apfel*, 2000 WL 1449887, at *5 n.3 (E.D. La. 2000) (refusing to decide the question, but citing a series of district and circuit court opinions finding that a low I.Q. score raises the presumption of manifestation during the developmental period). *But see Williams v. Sullivan*, 970 F.2d 1178 (3d Cir. 1992) (finding that the claimant had a burden of establishing that his mental retardation commenced during the developmental period). The Fifth Circuit has not reached this question, however, and the Court need not make a determination regarding such a presumption in the case at hand. Although the ALJ acknowledged that there was no evidence of I.Q. testing prior to 2004, he did not rest his decision solely on those grounds. Instead, he specifically concluded that Ms. Durden had not shown deficits in adaptive functioning. Likewise, the Court need not determine whether the ALJ erred by failing to take into account Kenneth Durden's testimony that Ms. Durden's mental retardation arose before the age of 22.

### 2.    Onset Date

The ALJ found that Ms. Durden did become disabled for the purposes of the Social Security Act on December 2, 2003.[10]  The Court finds that the ALJ's determination of the onset

---

[10] The ALJ consistently used the date December 2, 2003 in the findings section of the decision (Tr. at 23-24), and cited December 2, 2003 in his evaluation of the evidence (Tr. at 22). Confusingly, the ALJ also stated in his evaluation of the evidence that Plaintiff "has been under a 'disability' since February 2, 2003, and not prior thereto." (Tr. at 23.) Defendant seems to suggest that this was a typographical mistake. The Court need not decide whether this contradiction alone would justify remand because, as explained below, there is no substantial evidence to support the onset date of December 2, 2003.

date is not supported by substantial evidence and is at odds with the requirements of the relevant regulations.

The Agency has recognized that "it is essential that the onset date be correctly established and supported by the evidence." Soc. Sec. Admin., Onset of Disability, SSR 83-20 (1983).[11] SSR 83-20 sets forth guidelines for determining onset dates for disabilities of traumatic and nontraumatic origin. The ALJ appears to have found that Ms. Durden's disability was the result of nontraumatic or progressive origin.[12] When an impairment is progressive and the onset date must be inferred, "[c]onvincing rationale must be given for the date selected." *Id.* "How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis." *Id.* "[I]n cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor." *Spellman v. Shalala*, 1 F.3d 357, 362 -363 (5th Cir. 1993) (noting that claimant's medical chronology was incomplete); *see also* SSR 83-20 ("At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.").

The medical evidence does not support an onset date of December 2, 2003. No treating or examining physician opined that Ms. Durden became disabled on December 2, 2003 nor did any particular exam or event take place on that date. Instead, December 2, 2003 seems to correspond to the day that Dr. Alan Heilman filled out and signed his "medical source statement." (Rec. 148-50.) In this statement, Dr. Heilman made findings as to Ms. Durden's

---

[11] SSR 83-20 is "binding on all components of the Social Security Administration." 20 CFR § 402.35(b)(1).
[12] If the ALJ had thought Ms. Durden's disability was of traumatic origin, he presumably would have held the onset date to be August 1, 2001, the date of her workplace fall.

14

ability to stand, walk, or sit and her need to rest during an eight hour workday and her ability to lift and repetitively use her arms based on his diagnosis of spondylosis, degenerative disk disease. (Rec. 148-49.) When asked if Ms. Durden's condition "existed and persisted with the restrictions as outlined in this Medical Source Statement at least since August 15, 2001," however, Dr. Heilman declined to check yes or no. Instead, he noted that she slipped and fell in 2001, was treated by her primary care physician and was first seen by Dr. Heilman on May 23, 2003. (Rec. 149.) In response to a question asking whether Ms. Durden was likely to miss an average of more than two days of work per month due to her ailments since August 15, 2001, Dr. Heilman reiterated that he "first evaluated" Ms. Durden on May 23, 2003 and that she was being treated by her family physician prior to that time. (Rec. 150.) Thus, Dr. Heilman did not make any determination regarding the onset date of Ms. Durden's disability in the medical source statement.

Defendant argues that the ALJ considered the whole record before determining that Ms. Durden was disabled beginning December 2, 2003. While Dr. Heilman's various examinations in 2003 provide evidence regarding the progression of Ms. Durden's impairment, December 2, 2003 corresponds only to the date that he signed the medical source statement. Nor did the ALJ himself provide any explanation as to why he chose December 2, 2003 as the specific onset date of Ms. Durden's disability. Contrary to Defendant's assertion, Dr. Heilman did not "determine that her impairment was disabling as of December 2, 2003." (Def.'s Reply 6.) As explained above, the form only asked Dr. Heilman to opine as to whether Ms. Durden's impairment had existed since August 15, 2001, and Dr. Heilman declined to answer that question, indicating only that he had not begun treating her until May 2003. Although Dr. Heilman appears to have believed that her impairment was disabling on December 2, 2003, nothing in the statement

15

suggests that he did not find her impairment disabling prior to that date, as well. Plaintiff correctly notes that the ALJ apparently would have found Ms. Durden's disability to have begun earlier or later, depending on the day that Dr. Heilman happened to sign the form. Although the ALJ did not choose the onset date out of thin air, it does not correspond to any particular date in the progression of Ms. Durden's impairment and does not appear to have a legitimate medical basis. It therefore is not supported by substantial evidence. *See also Swanson v. Secretary of Health & Human Services*, 763 F.2d 1061, 1065 (9th Cir. 1985) ("[T]he critical date is the date of onset of disability, not the date of diagnosis." (cited with approval in *Spellman*, 1 F.3d at 363)). To the extent that the ALJ was unable to determine an onset date because of an ambiguity in medical evidence, he should have obtained medial expert testimony as required by *Spellman*, 1 F.3d at 363.

### 3.    Psychiatric Review Technique

Plaintiffs argue that the ALJ erred by failing to comply with the requirements of 20 C.F.R. §404.1520 which sets forth a special technique for evaluating the severity of mental impairments in adults. The ALJ must document the findings required by this technique. 20 C.F.R. § 404.1520a (e)(2) ("At the administrative law judge hearing and Appeals Council levels, the written decision issued . . . must incorporate the pertinent findings and conclusions based on the technique. . . . The decision must include a specific finding as to the degree of limitation in each of the functional areas . . . ."). The 2004 Appeals Council decision also directed the ALJ to evaluate Ms. Durden's mental impairment "in accordance with the special technique described in 20 C.F.R. §404.1520a and 416.920a and document application of the technique in the decision . . . ." (Rec. 193.)

16

Defendant admits that the ALJ failed to include the relevant analysis in his decision as required by the regulation, but argues that the omission does not justify remand because it did not result in harmful error. *See Mays v. Bowen*, 837 F.2d 1362, 1365 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."); *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) ("This Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." (internal citations and quotation marks omitted)).

Because the Court finds that the ALJ's decision must be vacated and remanded on other grounds, it declines to reach the question of whether Ms. Durden was prejudiced by the ALJ's failure to incorporate his specific findings based on the psychiatric review technique. On remand, the ALJ will, of course, continue to be bound by the requirements set forth in 20 C.F.R. §404.1520.

**4.      Commonplace Workplace Accommodation**

Plaintiff also argues that the ALJ erred by failing to consider that Ms. Durden requires a special accommodation in order to be able to work. Plaintiff urges that Ms. Durden was only able to work in the past because her husband helped her find work and remained on site after she was hired to help her adapt to the job and that other maids looked out for her at the motel. Plaintiff claims that no evidence contradicted Mr. Durden's testimony.

At the first hearing, the ALJ appeared skeptical that Ms. Durden actually needed her husband to play what Plaintiffs deem his "guardian angel" role in order to be able to work. (Rec.

301-302.) When questioning the Vocational Expert, Ms. Durden's attorney attempted to establish that Ms. Durden was only capable of performing sheltered work based on her husband's prior assistance at the motel job. (Rec. 312-13.) The ALJ explicitly rejected that argument stating that he saw "no evidence" that she was sheltered in her motel job and instead concluded that, although the people at the motel had given Ms. Durden a break, she required no special consideration. (Rec. 313-14.) Upon questioning by the ALJ, Mr. Durden also confirmed that Ms. Durden did not require more supervision than any of the other maids and was able to do as good a job as the other maids. (Rec. 315.)

Plaintiff stresses that only "commonplace" workplace accommodations may be assumed in disability cases and that "[i]n assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Meyers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); *see also* Jones v. Apfel, 174 F.3d 692 (5th Cir. 1999) (discussing commonplace accommodation). This is not a case involving a claimant with an undisputed need for specific medical accommodation. *See, e.g.*, *Sullivan v. Halter*, 135 F. Supp. 2d 985 (S.D. Iowa 2001) (reversing ALJ's decision where the only work the claimant could do would have required an employer to "make special accommodation of providing a telephone capable of being used by a hearing impaired individual"); *Waters v. Massanari*, No. 400CV1656-Y, 2001 WL 1143149 (N.D. Tex. 2001) (reversing ALJ's decision and remanding where hypothetical questions to vocational expert did not account for claimants undisputed need to have ready access to a restroom due to catheterization). Nor is it indisputably a case involving a claimant whose "impairments prevent [her] from doing 'ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work.'" *Boyes v. Secretary of Health and*

*Human Services*, 46 F.3d 510, 512 (6th Cir. 1994). The ALJ did not assume that employers would have to make more than a commonplace accommodation for Ms. Durden. Instead, the ALJ's determination that no such accommodation was required is supported by evidence that Ms. Durden did, in fact, do as good a job as other maids at the motel for over a decade. The ALJ also was entitled to find not credible Mr. Durden's testimony regarding Ms. Durden's need for special assistance at the early stages of her job. The Court realizes that the ALJ did not set forth these specific conclusions in his decision, however, and ordinarily the ALJ's "decision must stand or fall with the reasons set forth in the ALJ's decision." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Because this case will be remanded on other grounds, the Court declines to reach the question of whether the ALJ's failure to discuss this evidence would, standing alone, require remand.

**III.     CONCLUSION**

Because the ALJ erred in his determination of the onset date of Plaintiff's disability, Plaintiff's motion for summary judgment is **GRANTED** to the extent that the ALJ's decision is **VACATED**, and this case is **REMANDED** to the ALJ for further proceedings not inconsistent with this Memorandum and Order.

IT IS SO ORDERED.
SIGNED this 29th day of January, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT